**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RONALD WATTS,
                          Plaintiff,

v.                                        No. 03-CV-561
                                            (LEK/DRH)
ROBERT KASULKE,

                          Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

RONALD WATTS
No. 02-B-0948
Plaintiff Pro Se
Ready Willing Able
The Doe Fund, Inc.
520 Gates Avenue
Brooklyn, New York 11216-1506

HON. ANDREW M. CUOMO                JEFFREY M. DVORIN, ESQ.
Attorney General for the                     Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER [1]

      Plaintiff pro se Ronald Watts ("Watts"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Dr. Robert Kasulke ("Kasulke") violated his constitutional rights under the Eighth Amendment. Am. Compl. (Docket No. 32). Presently

---

      [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

pending is Kasulke's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 54. Watts has failed to respond to the motion. For the following reasons, it is recommended that Kasulke's motion be granted.

## I. Background

At all relevant times, Watts was incarcerated at Gouverneur Correctional Facility ("Gouverneur"). On August 23, 2002, after complaining of swelling and severe pain around his right calf, Watts was treated by Nurse Pelkey. Kasulke Decl. (Docket No. 54), Ex. A at 30; Am. Compl. at ¶ 2. Shortly thereafter, Watts was treated by Dr. George Sturtz, a staff physician. Kasulke Decl., Ex. A at 30. Over the next few months, Watts was repeatedly treated by DOCS physicians, including Kasulke. Id. at 28-30. On October 4, 2002, after examining Watts, Kasulke ordered an x-ray of Watts' right calf and also referred him to an orthopedic specialist. Id. at 28; Kasulke Decl. at ¶ 14. An ultrasound was performed on Watts on December 12, 2002 and it was noted that there was "some narrowing of the right popliteal vein." Kasulke Decl., Ex. A at 78.

On December 24, 2002, Kasulke again examined Watts and recommended that he be fitted with a thigh-high surgical stocking in an attempt to reduce the swelling in his leg. Id. at 26. Following receipt of the ultrasound results, Watts was scheduled for an outside consultation with a surgeon at SUNY Upstate Medical University Hospital ("University Hospital"). Id. at 58. On March 3, 2003, Dr. Kim, a surgeon at University Hospital, examined Watts and recommended a pelvic CT scan. Id. at 38-39. The CT scan was completed on April 10, 2003 and revealed no mass in Watts' pelvic area. Id. at 76. In May

2

and June 2003, Watts returned to University Hospital for follow up examinations with Dr. Kim. Id. at 41-43. On June 28, 2003, Watts was examined by Kasulke and he recommended continuing a conservative treatment of using a surgical stocking and daily aspirin. Id. at 18. Watts was released from Gouverneur in September 2003. Am. Compl. at ¶ 10. This action followed.

## II. Discussion

Watts' sole cause of action alleges that Dr. Kasulke was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some

doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Medical Care

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may

4

be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)). An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious. Chance, 143 F.3d at 702-03.

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs. Id. at 702. Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate. Id. at 703. Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Here, it is unclear whether Watts' condition constitutes a serious medical need.[2] However, even if Watts' condition is considered serious, his Eighth Amendment claim fails to demonstrate that Dr. Kasulke was deliberately indifferent.

Watts contends that Dr. Kasulke failed to timely hospitalize him after an immediate diagnosis could not be made, did not provide him with the proper medication, and failed to

---

[2] In fact, Dr. Kasulke's memorandum of law fails to address whether Watts' medical condition is considered serious. See Def. Mem. of Law (Docket No. 54) at 9-19.

5

postpone his release from prison until Dr. Kasulke cured his medical problem.  Am. Compl. at ¶¶ 9-11.  However, each of these contentions are simply disagreements over treatment methods and do not give rise to an Eighth Amendment violation so long as the treatment was adequate.  Chance, 143 F.3d at 703.  Here, the record is clear that Watts received more than adequate treatment.

Watts was initially treated on August 23, 2002 after complaining of pain in his right leg.  Kasulke Decl., Ex. A at 30.  Between August 2002 and his release from Gouverneur in September 2003, Watts was treated numerous times for his condition, including consultations with an orthopedic specialist and a surgeon from University Hospital.  See Kasulke Decl., Ex. A at 41-43, 54, 58; see also Am. Compl. at ¶ 2 ("On August 23, 2002, Plaintiff developed a swelling around the calf of the right leg accompanied by severe pain . . . [and] [n]umerous sick calls and doctor call outs followed in an attempt to diagnose the problem").  Watts was also given a pelvic CT scan and two separate ultrasounds.  Kasulke Decl., Ex. A at 71, 76, 78.  Nothing in the medical records demonstrates that Kasulke was deliberately indifferent to Watts' serious medical needs.  Thus, in light of Kasulke's documentary evidence to the contrary, Watts' conclusory allegations that Kasulke denied him proper medical treatment fail to raise a genuine issue of material fact as to Kasulke's deliberate indifference.  See Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996) ("mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment").

Therefore, it is recommended that Kasulke's motion on this ground be granted.

### C. Qualified Immunity

Dr. Kasulke also contends that he is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Watt's allegations as true, he has not shown that Kasulke violated his constitutional rights.

Therefore, in the alternative, it is recommended that defendant's motion on this ground be granted.

### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that Kasulke's motion for summary judgment (Docket No. 54) be **GRANTED** and that this case be terminated.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 29, 2007
      Albany, New York

_David R. Homer_
United States Magistrate Judge